# EXHIBIT C

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TROPICAL SMOOTHIE CAFÉ, LLC ) <br> and TSC-GA, LLC, ) <br> ) <br> Defendants/Third-Party Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MCGRIFF, SEIBELS, & WILLIAMS OF ) <br> GEORGIA, INC., ) <br> ) <br> Third-Party Defendant. ) | CIVIL ACTION NO. <br> 1:16-cv-04162-ODE |

## DECLARATION OF AVA J. CONGER IN SUPPORT OF
## THIRD-PARTY DEFENDANT'S MOTION TO COMPEL

I, AVA J. CONGER, declare the following:

1.  My name is Ava J. Conger. I am over the age of 21 and competent to testify. I am an attorney for Third-Party Defendant McGriff, Seibels & Williams of Georgia, Inc. ("McGriff") in this case. I make this declaration based on personal knowledge.

US2008 13541514 1

2. McGriff served its first requests for production of documents to Plaintiff Sentinel Insurance Company, Ltd. ("Hartford") on June 16, 2017. Ex. A.

3. McGriff sought, among other things, the "underwriting manuals, procedures, and/or guidelines" applicable to the insurance policies Hartford seeks the rescind in this action (the "Policies"), as well as the "underwriting manuals, procedures, and/or guidelines" applicable to workers' compensation policies (the "Workers' Compensation Policies") Hartford issued to Defendants/Third-Party Plaintiffs Tropical Smoothie Café, LLC and TSC-GA, LLC (collectively "Tropical Smoothie") from 2012 to 2014 (collectively referred to herein as "underwriting guidelines"). Ex. A, at 4.

4. Hartford agreed in its responses to produce the underwriting guidelines applicable to the Policies, but Hartford objected to producing the other underwriting guidelines McGriff requested. Ex. B, at 8-9.

5. McGriff also sought Hartford's complete underwriting files for the same policies. Ex. A, at 3-4.

6. Despite raising some objections to McGriff's request, Hartford agreed to produce documents contained in the underwriting files associated with these policies. Ex. B, at 7-8.

7. On August 4, 2017, counsel for McGriff sent a letter to counsel for Hartford addressing a number of Hartford's objections to McGriff's first requests for production of documents to Hartford, including Hartford's objection to producing underwriting guidelines applicable to the Workers' Compensation Policies. Ex. D. Among other things, McGriff explained in its August 4, 2017 letter to Hartford how the underwriting guidelines applicable to the Workers' Compensation Policies are relevant to the claims and defenses in this case. Ex. D.

8. Counsel for McGriff and Hartford conferred on various discovery issues, including which underwriting guidelines Hartford would agree to produce, during the month of August.

9. The parties had a telephone conference on this and other issues on August 18th. As of that point Hartford had not produced any documents to McGriff.

10. On August 23, 2017, counsel for Hartford sent a formal response letter to McGriff, in which Hartford conceded the underwriting guidelines for the Workers' Compensation Policies were at least "marginally relevant." Ex. E.

11. Hartford did not explain in the letter how any alleged burden for Hartford to comply with the request to produce the underwriting guidelines

applicable to the Workers' Compensation Policies would be disproportionate to the needs of the case.  Ex. E.

12. Hartford did not make its first document production until September 15, 2017.  In contrast, McGriff made a substantial initial production of documents on August 14, 2017.

13. Despite Hartford's agreement to produce at least some underwriting guidelines, Hartford's September 15, 2017 document production contained no documents responsive to this request.

14. Hartford supplemented its document production on October 20, 2017, with what appear to be only selective underwriting guidelines applicable to the restaurant industry.  Ex. G.

15. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████  Ex. G.

16. Although Hartford agreed to produce documents from its underwriting files for the Policies and the Workers' Compensation Policies, it was not apparent

which documents in Hartford's September 15, 2017 production comprised either of Hartford's underwriting files.

17.     Document number H-000203-06, produced in Hartford's September 15, 2017 document production, demonstrates that Hartford was aware Tropical Smoothie Café, LLC was a franchisor prior to issuing the Policies Hartford now seeks to rescind in this action.  This document cross-references a particular audit report, but it is also not apparent from Hartford's document production whether it has produced the audit report referenced in H-000203-06, and if so, what the bates range for this document is.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 3, 2017

s/Ava J. Conger
Ava J. Conger
