# EXHIBIT F

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., ) ) Plaintiff, ) ) v. ) ) TROPICAL SMOOTHIE CAFÉ, LLC and TSC-GA, LLC, ) ) Defendants/Third-Party Plaintiffs, ) ) v. ) ) MCGRIFF, SEIBELS, & WILLIAMS OF GEORGIA, INC., ) ) Third-Party Defendant. ) | CIVIL ACTION NO. 1:16-cv-04162-ODE |

## DECLARATION OF JULIE A. LIERLY IN SUPPORT OF THIRD-PARTY DEFENDANT'S MOTION TO COMPEL

I, JULIE A. LIERLY, declare the following:

1. My name is Julie A. Lierly. I am over the age of 21 and competent to testify. I am an attorney for Third-Party Defendant McGriff, Seibels & Williams of Georgia, Inc. ("McGriff") in this case. I make this declaration based on personal knowledge.

2. McGriff served its first requests for production of documents to Plaintiff Sentinel Insurance Company, Ltd. ("Hartford") on June 16, 2017. Ex. A.

3. McGriff sought, among other things, the "underwriting manuals, procedures, and/or guidelines" applicable to the insurance policies Hartford seeks the rescind in this action (the "Policies"), as well as the "underwriting manuals, procedures, and/or guidelines" applicable to workers' compensation policies (the "Workers' Compensation Policies") Hartford issued to Defendants/Third-Party Plaintiffs Tropical Smoothie Café, LLC and TSC-GA, LLC (collectively "Tropical Smoothie") from 2012 to 2014 (collectively referred to herein as "underwriting guidelines"). Ex. A, at 4.

4. Hartford agreed in its responses to produce the underwriting guidelines applicable to the Policies, but Hartford objected to producing the other underwriting guidelines McGriff requested. Ex. B, at 8-9.

5. McGriff also sought Hartford's complete underwriting files for the same policies. Ex. A, at 3-4.

6. Despite raising some objections to McGriff's request, Hartford agreed to produce documents contained in the underwriting files associated with these policies. Ex. B, at 7-8.

7. On August 4, 2017, counsel for McGriff sent a letter to counsel for Hartford addressing a number of Hartford's objections to McGriff's first requests for production of documents to Hartford, including Hartford's objection to producing underwriting guidelines applicable to the Workers' Compensation Policies. Ex. D.

8. The parties continued to confer regarding the underwriting guidelines into October, during which time counsel for Hartford and McGriff talked no less than three times and exchanged emails about the issue.

9. Hartford failed to explain during any of these conferrals how any alleged burden for Hartford to comply with the request to produce the underwriting guidelines applicable to the Workers' Compensation Policies would be disproportionate to the needs of the case.

10. On October 11, 2017, counsel for McGriff was informed that, despite Hartford's previous objection, there was in fact a single set of underwriting guidelines applicable to both the Policies and the Workers' Compensation Policies Hartford issued to Tropical Smoothie.

11. Hartford supplemented its document production on October 20, 2017, with what appear to be only selective underwriting guidelines applicable to the restaurant industry. Ex. G.

12. Counsel for McGriff emailed Hartford's counsel on October 31, 2017, about the insufficiency of Hartford's production and requested that Hartford confirm by the end of the day on November 1, 2017, whether Hartford intends to produce additional underwriting guidelines. To date, Hartford has not stated whether it intends to supplement its document production.

13. In addition to conferring with Hartford about the underwriting guidelines, counsel for McGriff conferred with Hartford's counsel beginning on October 4th to request that Hartford identify the bates ranges of the documents it produced on September 15, 2017, that correspond to each of its underwriting files. After repeated conferrals, including at least three phone calls during the month of October, Hartford has failed to identify the bates ranges for its underwriting files and has even claimed an inability to do so.

14. According to Hartford's counsel during McGriff's conferrals, the underwriting files for the Policies and the Workers' Compensation Policies may be interspersed.

15. Related to McGriff's general request that Hartford identify the bates ranges for its underwriting files, McGriff has also requested that Hartford explain whether it has produced a particular audit report that is referenced in H-000203-06, one of the documents Hartford produced to McGriff in this action. McGriff has also

requested that, if Hartford has produced this document, Hartford identify the bates range.  Hartford has failed to definitively answer either of these points to date.

16.  McGriff recently learned that Hartford is withholding some documents from its underwriting files for the Policies on the basis of privilege.  To date, McGriff has not received a privilege log from Hartford describing these documents and Hartford's basis for withholding them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 3, 2017

                                                    s/Julie A. Lierly
                                                  Julie A. Lierly